U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

JAN 2 9 2013

CLERK, U.S. DISTRICT COURT
By_____
                    Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CHRISTOPHER CHUBASCO WILKINS,      §
                                   §
            Petitioner,            §
                                   §
VS.                                §   NO. 4:12-CV-270-A
                                   §
RICK THALER, DIRECTOR, TEXAS       §
DEPARTMENT OF CRIMINAL JUSTICE,    §
CORRECTIONAL INSTITUTIONS          §
DIVISION,                          §
                                   §
            Respondent.            §

MEMORANDUM OPINION
and
ORDER

Before the court for decision is the petition of Christopher

C. Wilkins ("petitioner") for a writ of habeas corpus pursuant to

the authority of 28 U.S.C. § 2254.  After having considered such

petition, the answer thereto of respondent, Rick Thaler,

Director, Texas Department of Criminal Justice, Correctional

Institutions Division, petitioner's reply, the state trial,

appeal, and habeas records, and applicable legal authorities, the

court has concluded that the relief sought by such petition

should be denied.

I.

Background and Procedural History

Petitioner was charged by an indictment filed February 7,

2006, with intentionally or knowingly causing the October 28,

2005 death of Willie Freeman by shooting him with a firearm, and

during the same criminal transaction causing the death of Mike
Silva by shooting him with a firearm.  Wes Ball ("Ball") had been
appointed on December 2, 2005, to represent petitioner, in
accordance with article 26.052(e) of the Texas Code of Criminal
Procedure.  Upon motion filed by Ball, Bruce Cummings was
appointed in February 2006 as an investigator "with authority to
investigate and seek tangible and testimonial evidence from all
witnesses having knowledge or not regarding the accusations that
may be presented in [petitioner's] case."  Clerk's R., Vol. 1 at
16.  Warren St. John ("St. John") was appointed on February 16,
2008, as second chair attorney for petitioner, pursuant to the
authority of article 26.052(e).  Clifford W. Ginn, a licensed
private investigator, was appointed on January 8, 2008, for the
purpose of investigating the accusations made against petitioner
and "to investigate and seek tangible or testamentary evidence
from any and all witnesses regarding the accusations made against
[petitioner], except for the privileged material or work product
of the State."  Id. at 214.

The trial of petitioner commenced February 27, 2008.  On
March 4, 2008, the jury returned its verdict at the
guilt/innocence stage of his trial, finding petitioner guilty of
the offense of capital murder, as charged in the indictment.  As
related by the Court of Criminal Appeals of Texas in its October
20, 2010 unpublished opinion affirming petitioner's conviction

2

and sentence, the trial evidence that led to the capital murder
conviction was as follows:

> [Petitioner] gave statements to authorities that
> described his murders of Willie Freeman and Mike Silva.
> Freeman was a homeless man who lived in Fort Worth.
> Silva lived outside Fort Worth, but traveled into the
> city to purchase drugs.  Freeman would show Silva where
> to buy drugs, and Silva would share his purchases with
> Freeman.
>
> In October 2005, [petitioner] left a halfway house
> in Houston, stole a truck, and drove to Fort Worth.
> [Petitioner] happened upon Freeman, who offered to sell
> him some drugs.  But Freeman and his supplier tricked
> [petitioner] into buying a piece of gravel instead of a
> rock of cocaine.  The men took $20 from [petitioner]
> and laughed at him.  So [petitioner] decided to kill
> Freeman.
>
> Over the next few weeks, Freeman and [petitioner]
> used drugs together.  Freeman apologized for stealing
> from [petitioner] and gave him some drugs to make up
> for it.
>
> On October 27, 2005, [petitioner] told Freeman
> that he had some guns and drugs stashed on the west
> side of Fort Worth.  Silva agreed to drive Freeman and
> [petitioner] in Silva's vehicle.  From the back seat,
> [petitioner] directed Silva to an area on the west side
> of Fort Worth.  When they arrived at a deserted stretch
> of road, [petitioner] shot Freeman in the back of the
> head.  Silva stopped the vehicle and tried to escape,
> but he got caught in his seatbelt.  [Petitioner] shot
> him once in the neck and twice in the head.
> [Petitioner] then climbed into the driver's seat and
> began driving with Silva's body hanging outside of the
> vehicle, still entangled in his seatbelt.  [Petitioner]
> finally cut the seatbelt to remove Silva, and dumped
> the victims' bodies in a ditch at the side of the road.

> About a week later, after two high-speed police chases, Silva's vehicle was recovered, and [petitioner] was apprehended.

Wilkins v. Texas, No. AP-75,878, Oct. 20, 2010 Op. at 2-3.

The punishment phase of petitioner's trial commenced March 4, 2008. On March 11, 2008, the jury unanimously found, in response to special issues in the form prescribed by sections 2(b)(1) and (e)(1) of article 37.071 of the Texas Code of Criminal Procedure, (1) beyond a reasonable doubt that there was a probability that petitioner would commit criminal acts of violence that would constitute a continuing threat to society, and (2) that it could not find that, taking into consideration all of the evidence, including the circumstances of the offense, petitioner's character and background, and the personal moral culpability of petitioner, there was a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed. The trial judge signed a Capital Judgment on March 12, 2008, imposing a death penalty on petitioner.

Ball was appointed as counsel for petitioner on his direct appeal to the Texas Court of Criminal Appeals. The trial judge made findings on April 4, 2008, under article 26.052(k) of the Texas Code of Criminal Procedure, in reference to Ball's appointment. By its opinion issued October 20, 2010, the Texas

Court of Criminal Appeals affirmed the trial court's Capital

Judgment imposing the death sentence on petitioner.  Petitioner

then unsuccessfully petitioned the United States Supreme Court

for writ of certiorari.  Wilkins v. Texas, 131 S. Ct. 2901

(2011).

On March 13, 2008, the trial court appointed Jack Strickland

("Strickland") pursuant to article 11.071 of the Texas Code of

Criminal Procedure to represent petitioner for state writ of

habeas corpus purposes.  While his direct appeal was pending,

petitioner, acting through Strickland, filed a state application

for writ of habeas corpus in the trial court, raising eighteen

grounds for relief.  The State responded.  The trial court

adopted the State's proposed findings of fact and conclusions of

law, recommending to the Texas Court of Criminal Appeals that the

relief sought by petitioner be denied.  Based on those findings

and conclusions, as well as its own review of the record, the

Texas Court of Criminal Appeals denied petitioner's requested

relief.

Petitioner filed on May 22, 2012, the petition for habeas

corpus that is now before the court for decision.  Respondent

answered on September 6, 2012, and petitioner replied to the

answer on October 10, 2012.

II.

## Claims for Relief Asserted by Petitioner

The twenty-one claims for relief asserted by petitioner in the habeas petition under consideration are as follows:

### Claim for Relief Number 1

Petitioner's counsel failed to conform to prevailing professional norms with regard to the sentencing phase of trial because they failed to conduct a reasonable pretrial mitigation investigation, thereby violating Petitioner's rights under the Sixth, Eighth and Fourteenth Amendments.

.   .   .   .

### Claim for Relief Number 2

Petitioner was denied the right to unconflicted counsel at trial, because trial counsel had previously represented the victim of an extraneous homicide, thereby violating Petitioner's Sixth Amendment right to effective assistance of counsel.

.   .   .   .

### Claim for Relief Number 3

Petitioner was denied the right to counsel at a critical stage of the proceedings, because he was functionally without counsel during a hearing on whether his trial counsel had labored under a conflict of interests, having previously represented the victim of an extraneous homicide of which evidence was introduced by the State, thereby violating Petitioner's Sixth Amendment right to the assistance of counsel.

.   .   .   .

### Claim for Relief Number 4

(A)   Petitioner's plea of not guilty was not voluntary:
he had expressed his wish to plead guilty to
counsel, but at counsel's insistence the trial on
the merits went forward, thereby violating
Petitioner's Sixth Amendment right to the
effective assistance of counsel and to due process
of law under the Fourteenth Amendment.

(B)   Petitioner's plea of not guilty was not voluntary:
counsel knew that Petitioner wished to plead
guilty but insisted on the trial going ahead
because it would benefit counsel to do so, thereby
violating Petitioner's Sixth Amendment right to
the assistance of unconflicted counsel and to due
process of law under the Fourteenth Amendment.

        .   .   .   .

### Claim for Relief Number 5

(A)   Petitioner was not competent to enter a plea or to
stand trial since he lacked the ability to protect
his own interests, was self-destructive and was
incapable of making a reasoned choice between
legal strategies and options; being subjected to
trial while incompetent violated Petitioner's
right to due process of law under the Fourteenth
Amendment.

(B)   Petitioner was not competent to enter a plea or to
stand trial since he lacked the ability to protect
his own interests, was self-destructive and was
incapable of making a reasoned choice between
legal strategies and options; counsel's decision
to continue to trial while Petitioner was
incompetent violated Petitioner's Sixth Amendment
right to the effective assistance of counsel and
to due process of law under the Fourteenth
Amendment.

        .   .   .   .

7

Claim for Relief Number 6

Petitioner's counsel failed to conform to prevailing
professional norms with regard to the trial on the
merits because they failed to conduct reasonable
pretrial preparation and investigation, thereby
violating Petitioner's rights under the Sixth, Eighth
and Fourteenth Amendments.

.   .   .   .

Claim for Relief Number 7

Petitioner's counsel failed to conform to prevailing
professional norms because they failed to strike two
venire persons who would be unable to render an
impartial verdict or sentence, thereby violating
Petitioner's rights under the Sixth, Eighth and
Fourteenth Amendments.

.   .   .   .

Claim for Relief Number 8

Petitioner was denied the right to a public trial, to
be present during the course of his own trial, and
denied the right to counsel at a critical stage of the
proceedings, when the trial court issued supplementary
jury instructions in response to notes from the jury
without notifying Petitioner or counsel or reconvening
the court, thereby violating Petitioner's rights under
the Sixth and Fourteenth Amendment.

.   .   .   .

Claim for Relief Number 9

The presentation of factually inaccurate testimony
violated Petitioner's right to Due Process under the
Eighth and Fourteenth Amendments to the United States
Constitution.

.   .   .   .

### Claim for Relief Number 10

Petitioner's counsel failed to conform to prevailing
professional norms with regard to the sentencing phase
of trial because they failed to object to excessive and
prejudicial security measures adopted by the trial
court, which were not justified by any essential state
interest specific to Petitioner, in violation of
Petitioner's rights under the Fifth, Sixth, Eighth and
Fourteenth Amendments.

. . . .

### Claim for Relief Number 11

The jury instruction that mitigating evidence must
reduce "moral blameworthiness" violates the Eighth
Amendment by precluding consideration of evidence
regarding a defendant's character and background that a
juror could find to be mitigating.

. . . .

### Claim for Relief Number 12

Petitioner was denied the right to present evidence in
his own defense when the trial court excluded evidence
of a confession to an extraneous murder, thereby
violating Petitioner's right under the Sixth and
Fourteenth Amendments to a meaningful opportunity to
present a defense.

. . . .

### Claim for Relief Number 13

Petitioner's challenge to the admission of one of his
statements to law enforcement was erroneously denied;
the State had failed to meet its burden of showing a
voluntary waiver of counsel, thereby violating
Petitioner's rights under the Fifth Amendment.

. . . .

### Claim for Relief Number 14

Petitioner's challenges to two potential jurors were
erroneously denied even though one would have
automatically found Petitioner to be a future danger
and the other would have placed a burden on Petitioner
to present evidence in his defense, thereby violating
Petitioner's rights under the Sixth, Eighth and
Fourteenth Amendments.

.   .   .   .

### Claim for Relief Number 15

Petitioner's rights under the Fifth and Fourteenth
Amendments to the United States Constitution were
violated by the failure of Texas law to require grand
juries to pass on the death penalty eligibility factors
in this case.

.   .   .   .

### Claim for Relief Number 16

Petitioner's rights under the Fifth, Sixth, Eighth and
Fourteenth Amendments to the United States Constitution
were violated because the jury was misled by
instructions concerning the so-called "10-12 rule" in
the Texas death penalty statute.

.   .   .   .

### Claim for Relief Number 17

Petitioner's rights under the Fifth, Sixth, Eighth and
Fourteenth Amendments to the United States Constitution
were violated because the Texas death penalty scheme
fails to instruct the jury that if a single juror
"holds out" for life the defendant will receive a
sentence of life imprisonment by operation of law.

.   .   .   .

Claim for Relief Number 18

Petitioner's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution were violated because the Texas death penalty scheme does not place the burden of proof on the state on the mitigation special issue.

. . . .

Claim for Relief Number 19

Petitioner's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution were violated because the Texas death penalty scheme fails to instruct the jurors that a "Yes" answer to the mitigation evidence special issue is required unless the jurors determined that the aggravating evidence outweighs the mitigating evidence.

. . . .

Claim for Relief Number 20

Petitioner's rights under the Eighth and Fourteenth Amendments to the United States Constitution were violated because the Texas death penalty scheme fails to require the jury to consider mitigation in answering special issue two.

. . . .

Claim for Relief Number 21

Petitioner's rights under the Eighth and Fourteenth Amendments to the United States Constitution were violated because the Texas death penalty scheme fails to adequately define "mitigating circumstances."

Pet. at 24, 92, 101, 105, 118, 127, 136, 141, 148, 151, 154, 162, 165, 166, 174, 177, 181, 183, 187, 189, and 190.

III.

## Petitioner's Implied Complaints About Earlier Rulings of This Court

Over the years, the typical grounds for federal habeas relief have evolved from primarily complaints about state trial court conduct, then mainly to complaints about the conduct of trial counsel, and then to criticism of the adequacy of the petitioner's state habeas counsel.  The petition under consideration goes a step further with what are, in effect, complaints about previous rulings of this court in this habeas action that petitioner maintains have prevented him from adequately presenting his petition.

Petitioner starts at the bottom of page 5, going through most of page 6, of his petition with an implicit criticism of this court's failure to grant a motion he filed before he filed his petition, requesting almost $92,000.00 of government funds to pay for expert and investigative assistance.[1]  After having

--------

[1]In a document petitioner filed on May 25, 2012, he detailed the funds he was seeking and the uses he proposed to make of them as follows:

| | |
|---|---|
| Fact Investigator | |
|    Gilberto 'Gil' Torrez/Taurus Investigations | $30,000 |
| Mitigation Specialist | |
|    Gulf Region Advocacy Center | $37,500 |
| Neuropsychologist | |
|    Dr. Dale G. Watson | $22,035 |
| Prison Classification and Conditions Expert | |
|    Frank AuBuchon | $ 2,250 |
|    GRAND TOTAL: | $91,785 |

Appl. filed by Pet'r on May 25, 2012 at 18.

considered the motion and respondent's response thereto, the
court denied the motion by order signed June 19, 2012, on the
ground that the court was "unable to find that the requested
investigative, expert, and other services for which petitioner
has sought funding are reasonably necessary for the
representation of petitioner in this 28 U.S.C. § 2254
proceeding."  June 19, 2012 Order.  Petitioner failed to provide
in his motion for additional funds any meaningful specificity as
to the precise information he would expect to develop through any
such assistance or any plausible interpretation of any part of
22 U.S.C. § 2254 that would have authorized an order of the kind
requested by petitioner.  This court remains convinced that it
was correct in denying petitioner's request for virtually
unlimited money to start his criminal proceedings all over again.

    Next, on pages 6-10 of his petition, petitioner complains
that he still has not received the files of his former state
court counsel to be used by his current habeas counsel in the
preparation of his federal petition.  Implicit in petitioner's
presentation on this issue is a criticism of this court for not
granting motions he filed May 1, 2012, titled "Motion for Order
to Preserve Evidence and Directing Release of Client's Legal
Files" and on May 14, 2012, titled "Motion for Order to Release
Petitioner's Files to His Current Counsel," respectively.  The

court took seriously the contention that petitioner's state court counsel was refusing to turn over to his federal habeas counsel needed file material; and, the court, after having received a written response from state court counsel, conducted a hearing by telephone on May 31, 2012.  At that hearing, the court learned that petitioner's claims that his federal habeas attorney was being denied files of his state court counsel lacked substance. His federal habeas counsel virtually admitted as much during the hearing.  The court denied petitioner's motions because, based on what the court learned during the telephone conference hearing, the issue was moot.  That was the last this court heard of that matter until receipt of the petition now under consideration. Nothing alleged in the petition causes the court to conclude that petitioner's federal habeas counsel has not received all parts of his state court counsels' files relevant to his federal habeas petition.

Petitioner's federal habeas counsel does not make clear in his petition the true goal of his current complaints that he needed more money for an expert and investigative assistance and that he still has not received all of state court counsels' files other than to suggest that the existence of those complaints could, if all else fails, provide petitioner an avenue for further complaint.  See Pet. at 3, 6, 10, 136, 192.  Petitioner

has presented nothing to cause this court to think that it erred

in its orders denying additional funding and ruling moot

petitioner's claim that he had not received his legal files from

state court counsel.   To whatever extent petitioner might be

seeking relief because of either of those rulings, id. at 192,

such relief is being denied.

IV.

## Standards Applicable to Petitioner's
## Claims for Relief

A.   General Standards

In pertinent part, 28 U.S.C. § 2254 provides that the only

ground for relief thereunder is that the petitioner "is in

custody in violation of the Constitution or laws or treaties of

the United States."   28 U.S.C. § 2254(a).   A petition brought

under § 2254

> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings
> unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to,
>> or involved an unreasonable application of,
>> clearly established Federal law, as determined by
>> the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an
>> unreasonable determination of the facts in light

of the evidence presented in the State court
proceeding.

28 U.S.C. § 2254(d).

A decision is contrary to clearly established federal law if
the state court arrives at a conclusion opposite to that reached
by the Supreme Court of the United States on a question of law or
if the state court decides a case differently than the Supreme
Court has on a set of materially indistinguishable facts.
Williams v. Taylor, 529 U.S. 362, 405-06 (2000); see also Hill v.
Johnson, 210 F.3d 481, 485 (5th Cir. 2000). A state court
decision will be an unreasonable application of clearly
established federal law if it correctly identifies the applicable
rule but applies it unreasonably to the facts of the case.
Williams, 529 U.S. at 407-08.

In a § 2254 proceeding such as this, "a determination of a
factual issue made by a State court shall be presumed to be
correct" and the petitioner "shall have the burden of rebutting
the presumption of correctness by clear and convincing evidence."
28 U.S.C. § 2254(e)(1). A federal court may assume the state
court applied correct standards of federal law to the facts,
unless there is evidence that an incorrect standard was applied.

Townsend v. Sain, 372 U.S. 293, 314 (1963)[2]; Catalan v. Cockrell, 315 F.3d 491, 493 n.3 (5th Cir. 2002).

B.   Ineffective Assistance of Counsel

A criminal defendant has a constitutional right to the effective assistance of counsel at trial.   U.S. CONST. amends. VI, XIV; Strickland v. Washington, 466 U.S. 668, 685-86 (1984).   An ineffective assistance claim is governed by the familiar standards set forth in Strickland.   In order to prevail on an ineffective assistance of counsel ground, petitioner must show, first, that his counsel's performance was deficient, i.e., that his counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to petitioner by the Sixth Amendment, and, second, that the deficient performance prejudiced her defense, i.e., that his counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable.   Id. at 687.   The proper standard for measuring the attorney's performance is that of reasonably effective assistance.   Id.

Both prongs of the Strickland test must be met to demonstrate ineffective assistance.   Id. at 687.   To establish the first prong, petitioner must overcome a strong presumption

_____

[2]The standards of Townsend v. Sain have been incorporated into 28 U.S.C. § 2254(d).   Harris v. Oliver, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

that her counsel's conduct falls within the wide range of reasonable professional assistance or sound trial strategy. <u>Id.</u> at 689. It is not enough to show that some, or even most, defense lawyers would have handled the case differently. <u>Green v. Lynaugh</u>, 868 F.2d 176, 178 (5th Cir. 1989). For the second prong, petitioner must show that his counsel's errors were so serious as to "deprive [him] of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687.

Where a petitioner's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the standards set forth in <u>Strickland</u>. <u>See</u> <u>Bell v. Cone</u>, 535 U.S. 685, 698-99 (2002); <u>Santellan v. Dretke</u>, 271 F.3d 190, 198 (5th Cir. 2001).

V.

## Petitioner's Unexhausted Claims for Relief

A. <u>Petitioner is Barred from Asserting His Unexhausted Claims</u>

Petitioner acknowledges that he failed to exhaust his state court remedies with regard to his claims for relief 1 through 11 by not presenting them to the Texas Court of Criminal Appeals for review either on direct appeal or during his state habeas proceedings. Reply at 1-2. With specified exceptions, 28 U.S.C.

18

§ 2254(b)(1) prohibits the grant of an application for writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a state court unless he has first exhausted the remedies available to him in the courts of that state.[3]  In Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998), the Fifth Circuit explained:

> A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief. A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims.
>
> The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court. In Texas, the highest state court for criminal matters is the Texas Court of Criminal Appeals.  A federal court claim must be the "substantial equivalent" of one presented to the state courts if it is to satisfy the "fairly presented" requirement.

(footnotes omitted).

However, because the exhaustion requirement refers only to remedies still available at the time of the federal petition, it

---

[3]Section 2254(b)(1) of title 28 provides as follows:
(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
(A)  the applicant has exhausted the remedies available in the courts of the State; or
(B)(i)  there is an absence of available State corrective process; or
(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

is satisfied "if it is clear that the habeas petitioner's claims

are now procedurally barred under state law."  <u>Gray v.</u>

<u>Netherland</u>, 518 U.S. 152, 161 (1996) (internal citations

omitted)(quoting <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989));

<u>Graham v. Johnson</u>, 94 F.3d 958, 969 (5th Cir. 1996) ("exhaustion

is not required if it would plainly be futile").  This is the

exception upon which petitioner relies to satisfy the exhaustion

requirement as to his first eleven claims.  If petitioner were

now to return to state court and attempt to exhaust his first

eleven claims for relief, he would be barred from raising those

claims in a successive state court application by reasons of the

provisions of section 5(a) of article 11.071 of the Texas Code of

Criminal Procedure.[4]

---

[4]Section 5(a) of article 11.071 of the Texas Code of Criminal Procedure reads as follows:

    (a)    If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

    (1)    the current claims and issues have not been and could not have been presented in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;

    (2)    by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or

    (3)    by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072.

Tex. Code Crim. Proc. Ann. art. 11.071 § 5(a).  Petitioner has not attempted to show that any of the section 5(a) exceptions would allow state court review of any of his first eleven claims for relief.

Nevertheless, such a claim is subject to denial in federal court as procedurally defaulted.  Coleman v. Thompson, 501 U.S. 722, 729-30 (1991).  In Coleman, the court explained:

> This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.
>
> * * * * *
>
> We have applied the independent and adequate state ground doctrine not only in our own review of state court judgments, but in deciding whether federal district courts should address the claims of state prisoners in habeas corpus actions.  The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement.  In these cases, the state judgment rests on independent and adequate state procedural grounds.

Id.

Just as in Gray, "the procedural bar which gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claims, unless petitioner can demonstrate cause and prejudice for the default."  518 U.S. at 162.  See also Nichols v. Scott, 69 F.3d 1255, 1280 (5th Cir. 1995) (barring claim on basis that claim would be barred in state court if it were presented there).

The showing petitioner is required to make at this time is that he has cause[5] for his state court procedural default and has suffered actual prejudice as a result of the alleged violation of federal law or that the failure of this court to consider his claims will result in a fundamental miscarriage of justice.  In Coleman, the Supreme Court explained:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

501 U.S. at 750.

Petitioner seeks to avoid a procedural bar from federal habeas review of his claims one through eleven by reliance on the holding of the Supreme Court in Martinez v. Ryan, 132 S. Ct. 1309 (2012), arguing that his state habeas counsel's alleged inadequacies constitute, under the Martinez holding, cause to excuse petitioner's procedural default.

The Court held in Martinez that, under the Martinez facts and applicable Arizona state law, "[i]nadequate assistance of

---

[5] To establish "cause," petitioner must show that "some objective factor external to the defense" prevented him from raising the claim on direct appeal.  United States v. Guerra, 94 F.3d 989, 993 (5th Cir. 1996).

counsel at initial review collateral proceedings may establish

cause for a prisoner's procedural default of a claim of

ineffective assistance at trial," Martinez, 132 S. Ct. at 1315.

The Court limited the effect of its holding by stating that the

rule in Coleman, 501 U.S. at 755, that attorney negligence in

post-conviction proceedings does not establish cause "remains

true except as to initial-review collateral proceedings for

claims of ineffective assistance of counsel at trial," Martinez,

132 S. Ct. at 1319-21.

Among the reasons why Martinez does not provide comfort to

petitioner are the holdings of the Fifth Circuit that Martinez

does not apply to a case governed by Texas law.  Ibarra v.

Thaler, 687 F.3d 222, 227 (5th Cir. 2012); Adams v. Thaler, 679

F.3d 312, 317 n.4 (5th Cir. 2012).

B.    Even if *Martinez* Applied, It Would Not Benefit
      Petitioner

Even if the court were to assume, arguendo, that Martinez

applies to petitioner's unexhausted claims for relief,

nevertheless he would be limited out of those to his claims for

relief numbers 1 through 7 and 10, which are the ones alleging

directly or indirectly ineffective-assistance-of-counsel against

his trial counsel.  Because of the possibility that the Supreme

Court will disagree with the Fifth Circuit on applicability of

the Martinez principle to Texas,[6] the court is further addressing petitioner's unexhausted claims 1 through 7 and 10.  But first, the court addresses the contention of petitioner that his state habeas counsel was inadequate.

    1.    <u>Petitioner Has Made No Showing That His State Habeas Counsel Was Not Adequate</u>

For petitioner to successfully invoke Martinez, if it were to be applicable in Texas, he would be required to show that Strickland did not provide him adequate assistance of counsel during petitioner's state habeas proceeding.

Petitioner's conclusory complaint is that Strickland had conflicts of interest that prevented him from pursuing, and even caused him to hinder, the proper litigation of petitioner's claims in his state habeas petition.  Pet. at 11-13.  Not only does the state habeas record not support petitioner's conclusory assertions of deficient performance, the record demonstrates that Strickland urged, and fully briefed, eighteen grounds for relief in petitioner's state habeas petition.  State Habeas R. at 3-98.  The mere fact that Strickland did not raise an allegation or allegations that petitioner now contends he should have raised

---

[6]The Supreme Court has granted a writ of certiorari in <u>Trevino v. Thaler</u>, No. 11-10189, 133 S. Ct. 524 (Oct. 29, 2012), to address the question of whether the exception to procedural bar created in <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012), applies to cases arising out of the Texas state courts.  The Court has also stayed executions in cases presenting the same issue, but has not acted on the petitions for writ of certiorari in those cases.  <u>See</u> <u>Balentine v. Thaler</u>, No. 12-5906 (12A173), 133 S. Ct. 90 (Aug. 22, 2012); <u>Haynes v. Thaler</u>, No. 12-6760 (12A369), 133 S. Ct. 498 (Oct. 18, 2012).

does not render Strickland's assistance ineffective under the
Strickland standards.  See Smith v. Robbins, 528 U.S. 259, 285
(2000); Jones v. Barnes, 463 U.S. 745, 751-53 (1983); Engle v.
Isaac, 456 U.S. 107, 134 (1982).  Petitioner's conclusory,
argumentative, and factually unsupported attacks on the
professional reputation and performance of petitioner's state
habeas counsel do not begin to satisfy the Martinez standard;
moreover, the state habeas record affirmatively demonstrates that
Strickland provided petitioner proper, indeed vigorous, state
habeas representation.  Thus, even if petitioner had the benefit
of Martinez, he could not establish cause that would excuse his
unexhausted claims from being procedurally defaulted.

> 2.  Petitioner's Unexhausted Ineffective Trial
>     Counsel Claims Would Be Found to Be Without
>     Merit in Any Event

Even if the court were to further assume, arguendo, the
correctness of petitioner's contentions as to the quality of his
state habeas representation, he still would not be entitled to be
excused of his procedural bar because the unexhausted claims of
ineffective trial counsel are meritless.  As well as overcoming
the hurdle of establishing cause under Martinez, petitioner would
also have to show the merits of his underlying claims in order to
overcome a procedural default.  Martinez, 132 S. Ct. at 1318-19.
Petitioner has failed to make such a showing as to any of his

unexhausted claims that includes an assertion of ineffective trial counsel.

a.   Claims for Relief 1 and 10

Petitioner's claims 1 and 10 bear on the effectiveness of his trial counsel at the punishment phase of his trial.  Claim for relief 1 is directed to the adequacy of trial counsel's pretrial mitigation investigation, and claim number 10 complains of trial counsel's conduct in relation to security measures adopted by the trial court during the punishment phase. Petitioner fails in his petition to demonstrate that trial counsel's performance was constitutionally ineffective as to either of those matters or that any alleged deficiency had any prejudicial effect on the outcome of the punishment phase.

For petitioner to establish that his trial counsel was ineffective by virtue of a failure to investigate, he must do more than merely allege a failure to investigate -- he must show, inter alia, "with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." United States v. Green 882 F.2d 999, 1003 (5th Cir. 1989). Strategic choices made by counsel after thorough investigation of law and facts cannot normally be challenged; and, even strategic choices made after an investigation that might be characterized as incomplete are reasonable to the extent that professional

26

judgments, reasonably exercised, support the limitations on investigation. Strickland, 466 U.S. at 699. Trial counsel was not required to investigate every conceivable line of mitigating evidence, no matter how unlikely the investigation would assist petitioner at sentencing; nor is trial counsel required to present mitigating evidence at sentencing in every case. Wiggins v. Smith, 539 U.S. 510, 533 (2003). For a conscious and informed decision on trial tactics and strategy to form the basis for a claim of ineffective assistance of counsel, the petitioner must show that the strategy was so poor that it robbed him of any opportunity for a fair trial. Smith v. Cockrell, 311 F.3d 661, 668 (5th Cir. 2002). Of course, trial counsel's decision to pursue one course rather than another is not to be judged in hindsight; and, the fact that a particular strategy proved to be unsuccessful does not establish that counsel's assistance was ineffective. Gray v. Lucas, 677 F.2d 1086, 1094 (5th Cir. 1982).

Trial counsel sought and obtained the assistance of an investigator, Bruce Cummings, in February 2006 "with authority to investigate and seek tangible and testimonial evidence from all witnesses having knowledge or not regarding the accusations that may be presented in [petitioner's] case". Clerk's R., Vol. 1 at 16. Around March 2006, trial counsel obtained the services of mitigation specialist Melissa Robinson. Pet. Ex.'s 5, 13.

When Cummings and Robinson were replaced (Robinson due to health problems, Pet. Ex. 6), trial counsel obtained the services of two investigators in January 2008, Cliff Ginn and Doug Lamberson, as replacement for Cummings, and hired Dr. Kelly Goodness to act as both a mitigation specialist and a forensic psychologist. Clerk's R., Vol. 1 at 212-14, Pet. Ex.'s 11-16, 19, 20, 24 at 2-3, 25, 28. The record shows that Ginn, Lamberson, and Goodness worked diligently at mitigation investigation. Pet. Ex.'s 11-16, 19, 20, 24 at 2-3, 25, 28. Not only does the record contain substantial evidence that trial counsel caused timely and reasonable investigation to be conducted, the record shows that nine witnesses were called on petitioner's behalf at the punishment hearing.

Petitioner has provided no evidence that any of the experts employed by petitioner's trial counsel did not properly perform the services for which they were hired. Petitioner's conclusory allegations complaining of the conduct of trial counsel in advance of and at the punishment phase of his trial simply are not sufficient to show that petitioner suffered prejudice by reason of any failure on the part of trial counsel in relation to investigation leading to the sentencing process. Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990) (Mere conclusory allegations do not raise a constitutional issue in a habeas

case); <u>Ross v. Estelle</u>, 694 F.2d 1008, 1011 (5th Cir. 1993).
Having failed to provide any evidence as to what his trial
counsel would have discovered by further investigation, or that
the investigation done by trial counsel was, in fact, inadequate,
petitioner cannot overcome the strong presumption that counsel's
conduct falls within the wide range of reasonable professional
assistance, <u>Strickland</u>, 466 U.S. at 687, 689, nor can petitioner
show that more, or a different, investigation would have altered
the outcome.

The complaint petitioner makes by his tenth claim for relief
is that his trial counsel did not object to "excessive and
prejudicial security measures adopted by the trial court, which
were not justified by any essential state interest specific to
[him]." Pet. at 151-53. He asserts that the "excessive number
of guards," one of which was holding the control to a taser belt
worn by petitioner, was a prejudicial violation to which
petitioner's trial counsel should have, but did not, object. <u>Id.</u>

Petitioner provides no reference to anything in the state
court record that would support his recitations concerning the
security measures of which he complains; and, the court's
independent search has not turned up anything in the record
supporting petitioner's factual assertions relative to what he
considers to be excessive security measures. Thus, if for no

29

other reason, his tenth claim for relief should be denied as
being unsupported factually by anything in the record to which
petitioner has called this court's attention.

The court would add that even if the record did provide
factual support for petitioner's tenth claim for relief,
petitioner has provided no factual or legal basis for a
conclusion that an objection by his trial counsel to those
security measures would have been effective.   The case law
suggests that any such objection probably would have been futile.
See Deck v. Missouri, 544 U.S. 622, 633 (2005); United States v.
Joseph, 333 F.3d 587, 591 (5th Cir. 2003) (citing United States
v. Hope, 102 F.3d 114, 117 (5th Cir. 1996)).   The trial court
record makes clear that petitioner had a propensity for violence
and had before attempted an escape.   Thus, his trial counsel
would have gained nothing by an objection to security measures of
the kind petitioner describes.

Moreover, petitioner presents nothing showing that his trial
counsel's failure to object to the security measures somehow
affected the outcome of petitioner's trial.   Pure speculation
that it might have is not sufficient to satisfy the prejudice
prong of Strickland.   Consequently, his ineffective assistance
claim as to the security measures fails for the additional reason
that it does not satisfy either prong of the Strickland test.

30

b.   <u>Claim for Relief 2</u>

Petitioner's second claim for relief has to do with an alleged conflict of interest that petitioner claims one of his trial counsel had because, twenty years earlier, the trial counsel had represented a third murder victim of petitioner in connection with a burglary charge.[7]   Petitioner originally raised that issue with the Texas Court of Criminal Appeals prior to his direct appeal proceedings in a "Motion to Fire Direct Appeal Attorney," and the Court of Criminal Appeals remanded the case to the trial court to investigate.   <u>Wilkins v. State</u>, No. AP-75,878, Per Curiam Order dated February 11, 2009.   After conducting a hearing at which trial counsel and petitioner both testified, Rep.'s R. of Mar. 9, 2009, Hr'g at 6-32, the trial court concluded that trial counsel had no conflict of interest notwithstanding his representation of the third murder victim twenty years earlier, <u>id.</u> at 27.   Nevertheless, the trial court allowed trial counsel to withdraw as direct appeal counsel and replaced him with another attorney.   <u>Id.</u> at 27-28.   Petitioner did not request relief on this claim either on direct appeal or during his state habeas proceeding.

---

[7]At the punishment phase of petitioner's trial, there was evidence, including petitioner's confession, that petitioner murdered the other victim two days prior to committing the murders for which he was tried.

For petitioner to establish that he was denied effective assistance of counsel because of counsel's conflict of interest, he was required to prove that (1) counsel actively represented conflicting interests, and (2) that an actual conflict of interest adversely impacted his lawyer's performance. Cuyler v. Sullivan, 446 U.S. 335, 348-49 (1980); Ramirez v. Dretke, 396 F.3d 646, 649 (5th Cir. 2005). If a petitioner fails to make such a showing, he has failed to establish the constitutional predicate for his claim of ineffective assistance of counsel. Cuyler, 446 U.S. at 350; see also Mickens v. Taylor, 535 U.S. 162, 175-76 (2002).

Here, petitioner could not possibly demonstrate that trial counsel actively represented conflicting interests since the murder victim he had represented was deceased and had not been represented by trial counsel in twenty years. Pet. Ex. 24 at 4. Nor has any evidence been adduced by petitioner that his trial counsel had any relationship with the murder victim's family or that he even remembered representing the murder victim. Id. Finally, there is no suggestion in anything adduced by petitioner that, even if trial counsel's representation of the murder victim could be considered a conflicting interest, it adversely affected his legal representation of petitioner.

Petitioner's second claim for relief would be without merit even if he were permitted to pursue it.

    c.   <u>Claim for Relief 3</u>

Petitioner's third claim for relief relates to the same unindicted murder that was the subject of his second claim for relief. The complaint this time is that petitioner was <u>de facto</u> without counsel during the hearing that was convened to ascertain whether trial counsel had a conflict of interest affecting the adequacy of his representation of petitioner. As is true of his second claim conflict-of-interest allegation, petitioner never raised the allegation under discussion either on direct appeal or during his state habeas proceeding. This claim is without merit because the pre-appeal hearing about which petitioner complains was not at a critical stage.

While the Sixth Amendment provides that in all criminal prosecutions, the accused enjoys the right to have the assistance of counsel for his defense, it is settled that the Amendment means that "a defendant is entitled to be represented by counsel at all <u>critical stages</u> of a criminal proceeding against him." <u>Mempa v. Rhay</u>, 389 U.S. 128, 134 (1967); <u>see also</u> <u>United States v. Taylor</u>, 933 F.2d 307, 312 (5th Cir. 1991). The Supreme Court has made clear that a "critical stage" in the proceedings is only one at which "rights are preserved or lost." <u>White v. Maryland</u>,

373 U.S. 59, 60 (1963).  Fifth Circuit law is that critical stages of a criminal proceeding are those stages of a proceeding at which "the substantial rights of a defendant may be affected." McAfee v. Thaler, 630 F.3d 383, 391 (5th Cir. 2011); Burdine v. Johnson, 262 F.3d 336, 347 (5th Cir. 2001).  At the hearing of which petitioner complains, no substantial rights were affected, and no rights were "preserved or lost."  Wright, 373 U.S. at 60. The goal of the hearing was solely to determine whether petitioner's trial counsel should continue representing him on direct appeal.  See Wilkins v. State, No. AP-75,878, Per Curiam Order dated February 11, 2009.

Moreover, petitioner hardly has basis to complain of his representation at the hearing because he ended up receiving what he was seeking -- new counsel on his appeal.  Petitioner cannot legitimately claim that anything happened that would render "the adversary process itself unreliable."  United States v. Russell, 205 F.3d at 768, 771 (5th Cir. 2000).

Petitioner's third claim would fail for lack of merit even if it could be urged notwithstanding its lack of exhaustion.

d.   <u>Claim for Relief 4</u>

By his fourth claim for relief, petitioner advances the
somewhat absurd contention that his plea of not guilty was not
voluntary and that his trial counsel knew that he wished to plead
guilty but insisted on going forward with a trial so that the
attorneys would benefit financially from the trial.  The court
does not need to devote significant time or space to this claim.
No harm came to petitioner from having gone to trial
notwithstanding a wish to plead guilty, if he had such a wish,
because the end result was the same -- the jury found him guilty
of capital murder, just as he would have been found guilty of
capital murder if he had pleaded guilty.  Therefore, this claim
for relief would be without merit even if it could be asserted.

e.   <u>Claim for Relief 5</u>

Petitioner's fifth claim for relief asserts that he was not
competent to enter a plea or to stand trial because he "lacked
the ability to protect his own interests, was self-destructive
and incapable of making a reasoned choice between legal
strategies and options." Pet. at 118.  Yet, not the slightest
probative evidence has been presented, or suggested, in support
of such a contention.  His reference to what he refers to as bad
decisions he made prior to the trial and to two reports
indicating he had some neuropsychological deficits does not

satisfy the burden he had "to positively, unequivocally, and clearly generate a real, substantial and legitimate doubt as to his mental competency at the time of trial." <u>Dunn v. Johnson</u>, 162 F.3d 302, 306 (5th Cir. 1998) (internal quotations omitted). <u>See also</u> <u>Carter v. Johnson</u>, 131 F.3d 452, 460 (5th Cir. 1997). Petitioner's threshold burden to successfully urge such a ground is "extremely heavy." <u>Miller-El v. Johnson</u>, 261 F.3d 445, 454 (5th Cir. 2001), <u>rev'd on other grounds</u>, 537 U.S. 322 (2003); <u>Johnson v. Estelle</u>, 704 F.2d 232, 238 (5th Cir. 1983). Not only must petitioner present enough probative evidence to raise a substantial doubt as to his competency at the time of trial, he must then prove his incompetency by a preponderance of the evidence. <u>Moody v. Johnson</u>, 139 F.3d 477, 481 (5th Cir. 1998).

The two-part test for competence is (1) whether the defendant has "a rational as well as factual understanding of the proceedings against him" and (2) whether the defendant "has sufficient present ability <u>to consult with his lawyer</u> with a reasonable degree of rational understanding." <u>Indiana v. Edwards</u>, 554 U.S. 164, 170 (2008) (citing <u>Dusky v. United States</u>, 362 U.S. 402 (1960) (emphasis in original).

If the evidence before the trial court presents a bona fide doubt as to a defendant's competency, procedural due process requires the trial court to hold a competency hearing before

proceeding with trial.  <u>Pate v. Robinson</u>, 383 U.S. 375, 385
(1966).  A bona fide doubt is a real, substantial, and legitimate
doubt.  <u>Pedrero v. Wainwright</u>, 590 F.2d 1383, 1388 (5th Cir.
1979).  A habeas petitioner carries the burden of showing by
clear and convincing evidence that a <u>Pate</u> violation occurred at
the state criminal proceeding.  On collateral review, the test is
"whether, in light of what was then known [by the state trial
court], the failure to make further inquiry into [petitioner's]
competence to stand trial, denied him a fair trial."  <u>Drope v.
Missouri</u>, 420 U.S. 162, 174-75 (1975).

Petitioner does not adduce any evidence to indicate that
either a <u>Dusky</u> or a <u>Pate</u> violation occurred in petitioner's case.
The mere fact that a defendant made poor decisions does not make
him incompetent to stand trial.  If it did, almost any defendant
could avoid prosecution simply by pointing to all the bad
decisions he made during his life.  While petitioner's behavior
prior to and during trial demonstrated a blatant disregard for
authority and of the proceedings against him, his behavior cannot
be said to constitute proof of his inability to understand the
proceedings or consult with his attorneys.

Even if it could be raised, petitioner's claim number 5
would be without merit.

f.   <u>Claims for Relief 6 and 7</u>

Petitioner's sixth and seventh claims contend that his trial counsel was ineffective at the guilt/innocence phase of his trial.  The sixth claim makes the broad assertion that his counsel failed to conduct a reasonable pretrial preparation and investigation, and his seventh claim attributes ineffectiveness to his counsel for not striking two venirepersons who petitioner now contends were unable to render an impartial verdict or sentence.  In addition to the procedural bar previously discussed, these claims must fail because petitioner does not demonstrate how counsel's alleged inaction resulted in a deprivation of the right to effective assistance of counsel under the <u>Strickland</u> standard.

As to the general failure to prepare and investigate for trial claim, petitioner virtually admits that his petition is deficient, contending that he "is not currently in a position to allege any specific claim" due to reasons beyond his control. Pet. at 135-36.  He fails to provide any evidence as to what his trial counsel should have discovered, and he fails to demonstrate that the investigation done by his trial counsel was in fact deficient.  <u>Jordan v. Dretke</u>, 416 F.3d 363, 371 (5th Cir. 2005) (confirming that the burden of affirmatively proving prejudice rests with the petitioner and that the state does not have the

burden to disprove prejudice).  Petitioner has not overcome the strong presumption that counsel's pretrial conduct came within the wide range of reasonable professional assistance, nor has he provided evidence that the result of his proceeding would have been different absent any alleged deficiency.  Consequently, he cannot satisfy either prong of Strickland.

Similarly, petitioner has failed to make any showing that his trial counsel's performance was deficient in respect to non-use of peremptory challenges on the two jurors to which he refers in his seventh claim.  He has failed to offer any proof that "counsel's representation fell below an objective standard of reasonableness under then-prevailing professional standards." Richards v. Quarterman, 566 F.3d 553, 564 (5th Cir. 2009) (internal quotation marks and citations omitted).  For a court to determine whether trial counsel's failure to strike a particular juror constitutes deficient performance, the court must first evaluate whether the juror at issue was actually biased.  Virgil v. Dretke, 446 F.3d 598, 608-10 (5th Cir. 2006); see also Seigfried v. Greer, 372 F. App'x 536, 539 (5th Cir. 2010) (unpublished).  The determination of a potential juror's bias centers on a juror's own indication that he has "such fixed opinions that he cannot judge impartially respondent's guilt." Patton v. Yount, 467 U.S. 1025, 1035 (1984).  Failing such a

showing, a petitioner cannot demonstrate that he was denied his
Sixth Amendment right to a fair and impartial jury. <u>See</u> <u>Smith v.</u>
<u>Phillips</u>, 455 U.S. 209, 215 (1985).  Petitioner has failed to
make the required showings as to either of the jurors about which
he has complained.

C.    <u>Conclusion as to Petitioner's Unexhausted Claims for Relief</u>

     None of petitioner's unexhausted claims for relief can be
pursued in this federal habeas action unless petitioner can
demonstrate cause and prejudice for his procedural default as to
the claim.  He does not contend that the failure of this court to
consider his unexhausted claims would result in a fundamental
miscarriage of justice.  Rather, he pitches his plea for
consideration of his unexhausted claims on his theory that state
habeas counsel was inadequate, that <u>Martinez</u> applies in Texas so
that the inadequacy of state habeas counsel satisfies the cause
feature of his cause and prejudice prerequisites, and that he was
prejudiced by his state habeas counsel's failures to raise in his
state habeas application his claims for relief 1 through 11.
Petitioner's theory for avoiding the bar related to his
unexhausted claims is faulty in multiple respects.

     First, the Fifth Circuit has held that <u>Martinez</u> does not
apply to a federal habeas petition arising from a Texas
conviction.  Therefore, <u>Martinez</u> does not provide the "cause"

40

that is so essential to petitioner's theory.  Second, even if Martinez did apply, petitioner has failed to show that Strickland, his state habeas counsel, did not provide him adequate representation in the prosecution of his state habeas application.  Third, even if Martinez were assumed to be applicable in Texas and Strickland's state habeas representation were assumed to have been inadequate, Martinez would provide cause only as to the unexhausted claims that assert ineffective assistance of trial counsel, which would be limited to his claims for relief 1 through 7 and 10; and, petitioner's claims for relief 1 through 7 and 10 are not shown by petitioner to have merit, with the consequence that he would have failed to carry his burden of establishing prejudice even if he had satisfied the cause feature of his cause and prejudice burden.[8]  Thus, for multiple reasons, petitioner must be denied any relief based on his unexhausted claims for relief.

---

[8]The court is not addressing further petitioner's unexhausted claims for relief 8, 9, and 11, none of which remotely involve a contention of ineffective assistance by trial counsel, other than to note that the court's review of those claims causes the court to conclude that even if they legitimately could be presented in this federal habeas petition, they would be without merit.  The court has considered, and rejects, petitioner's argument (which assumes applicability of Martinez) that Maples v. Thomas, 132 S. Ct. 912 (2012), provides an avenue for this court to consider petitioner's unexhausted claims even though they do not urge ineffective assistance of trial counsel.  The court concludes that petitioner is in error in making such a contention because Maples simply would not apply to this case even if petitioner's state habeas counsel had not performed properly.

41

VI.

Petitioner's Exhausted Claims for Relief

Petitioner devotes only 28 pages of his 193-page petition to discussion of his exhausted claims for relief 12 through 21.   In petitioner's reply to respondent's answer to the petition, petitioner, in effect, argues that none of the exhausted claims for relief has merit.   Reply at 4-5.   His lack of merit contentions as to the unexhausted claims are summed up in his reply with the statement that "[t]he state habeas application as filed therefore stood literally no chance of success."   Reply at 5.   That petitioner does not take the exhausted claims for relief seriously, and is not asking this court to do so, is further evidenced by the fact that he makes no further mention of any of them in his 101-page reply to respondent's answer, even though respondent included in its answer a response to each of those claims.   Given petitioner's lack of interest in his claims 12 through 21, the court is not devoting in this memorandum opinion significant space to a discussion of those claims.   The court starts with a reminder that a petition under § 2254

> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings
> unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to,
>> or involved an unreasonable application of,

42

> clearly established Federal law, as determined by
> the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light
> of the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d).  Petitioner has not shown that any of the

state court's adjudications of petitioner's claims for relief 12

through 21 resulted in a decision that (1) "was contrary to, or

involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United

States," or (2) "was based on an unreasonable determination of

the facts in light of the evidence presented in the State court

proceeding."  Id.  Therefore, all of petitioner's exhausted

claims must be denied.

VII.

Conclusion and Order

For the reasons given above, all relief petitioner seeks by

his petition must be denied.  Petitioner has provided nothing to

support the relief he seeks by parts (a), (b), (c), and (d) on

page 192 of his petition.  Nor has he provided a valid basis for

granting any of his claims for relief.  Therefore,

43

The court ORDERS that all relief sought by the Petition for Writ of Habeas Corpus by a Person Sentenced to Death filed by petitioner on May 22, 2012, be, and is hereby, denied.

SIGNED January 29, 2013.

JOHN McBRYDE
United States District Judge