

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 2 5 2013

CLERK, U.S. DISTRICT COURT
By _____ 10:20 am
Deputy

CHRISTOPHER CHUBASCO WILKINS, §
§
    Petitioner, §
§
   - vs - §    Civil No. 4:12-cv-00270-A
§
§    THIS IS A DEATH PENALTY CASE
§
RICK THALER, Director, §
Texas Department of Criminal Justice, §
Correctional Institutions Division, §
§
    Respondent. §

---

**PETITIONER'S MOTION TO VACATE, ALTER OR AMEND JUDGMENT
DENYING PETITION FOR WRIT OF HABEAS CORPUS.**

HILARY SHEARD
Texas Bar # 50511187
7301 Burnet Road, # 102-328
Austin, TX 78757
Phone/Fax: (512) 524 1371
HilarySheard@Hotmail.com

*Counsel for Christopher Chubasco Wilkins, Petitioner.*

PETITIONER'S MOTION TO VACATE, ALTER OR AMEND JUDGMENT
DENYING PETITION FOR WRIT OF HABEAS CORPUS

TABLE OF CONTENTS ....................................................................................i

INDEX OF AUTHORITIES ............................................................................ii

I.    Petitioner's Complaints Concerning State Habeas Counsel ..................  2

II.   *Martinez v. Ryan* may, and *Maples v. Thomas* does, provide cause
      to excuse Petitioner's procedural default ..............................................5

III.  Petitioner's Application for Funding ....................................................  8

IV.   The Files of Former Counsel ...............................................................9

V.    Petitioner's Claims for Relief ............................................................ 11

      a.    Claims for Relief 1 and 10 ......................................................... 11

      b.    Claim for Relief 2 and 3 ............................................................ 14

      c.    Claim for Relief 4 ...................................................................... 16

      d.    Claim for Relief 5 ...................................................................... 17

      e.    Claim for Relief 6 ...................................................................... 18

      f.    Claim for Relief 7 ...................................................................... 19

CONCLUSION AND PRAYER FOR RELIEF............................................ 20

CERTIFICATE OF SERVICE ..................................................................... 21

CERTIFICATE OF CONFERENCE ............................................................ 21

# INDEX OF AUTHORITIES

## FEDERAL CASES

*Deck v. Missouri*, 542 U.S. 622 (2005) ............................................................................14

*Dunn v. Johnson*, 162 F.3d 302 (5th Cir. 1998) ..............................................................18

*Edward H. Bohlin, Inc. v. The Banning Co., Inc.*, 6 F. 3d 350 (5th Cir. 1993) ..................2

*Florida v. Nixon*, 543 U.S. 175 (2004) .............................................................................17

*Foman v. Davis*, 371 U.S. 178 (1962) ................................................................................2

*Kelly v. Delaware River Joint Comm'n*, 187 F.2d 93 (3rd Cir. 1951) .................................2

*Maples v. Thomas*, 132 S.Ct. 912 (2012) .................................................................*passim*

*Martinez v. Ryan*, 132 S.Ct. 1309 (2012) .................................................................*passim*

*McFarland v. Scott*, 512 U.S. 849 (1994) ...........................................................................8

*Patterson v. Johnson*, 2000 U.S. Dist. LEXIS 12694 (N.D. Tex. Aug. 31, 2000) ............8

*Strickland v. Washington*, 466 U.S. 668 (1984) .................................................................5

*Smith v. Phillips,* 455 U.S. 209 (1985) .............................................................................20

*Trevino v. Thaler,* 133 S.Ct. 524 (Oct. 29, 2012) ..............................................................5

## STATE CASES

*Ex parte Medina*, 361 S.W.3d 633 (Tex. Crim. App. 2011) ...............................................5

*Ex Parte Wilkins*, No. WR-75,229-01 (Tex. Crim. App. 2011) .........................................3

## DOCKETED CASES

*Hunton v. Sinclair*, No. 12-35363 (9th Cir. January 7, 2013) ............................................7

ii

## FEDERAL STATUTES

18 U.S.C. § 3599 ................................................................................................................ 8

21 U.S.C. § 848 ................................................................................................................. 8

## FEDERAL RULES

FED. R. CIV. P. 59(e) .......................................................................................................... 2

## STATE STATUTES

TEX. CODE CRIM. PROC. Art. 11.071 ................................................................................. 4

## TREATISES AND LAW REVIEWS

Andrea D. Lyon, *Defending the Death Penalty Case: What Makes Death Different?*,
42 Mercer L. Rev. 695 (1991) .........................................................................................17

11 Wright, Miller & Kane, *Federal Practice and Procedure* § 2810.1 (2nd ed. 1995) ..................2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CHRISTOPHER CHUBASCO WILKINS, §
§
Petitioner, §
§
- vs - §　　Civil No. 4:12-cv-00270-A
§
§　　THIS IS A DEATH PENALTY CASE
§
RICK THALER, Director, §
Texas Department of Criminal Justice, §
Correctional Institutions Division, §
§
Respondent. §

PETITIONER'S MOTION TO VACATE, ALTER OR AMEND JUDGMENT
DENYING PETITION FOR WRIT OF HABEAS CORPUS.

Petitioner, Christopher Chubasco Wilkins, by and through counsel, hereby moves

this Honorable Court, pursuant to Federal Rule of Civil Procedure 59(e) to vacate, alter or

amend its Memorandum Opinion and Order, and Judgment, denying his Petition for a

Writ of Habeas Corpus, entered on January 29, 2013. (Docket #s 60 and 61).

Federal Rule of Civil Procedure 59 (e) provides that a motion to alter or amend the

judgment may be filed within 28 days after entry of the judgment. This Motion is being

timely filed on or before that 28th day, which is February 26, 2013.

While the rule itself does not specify this, there are four basic grounds for granting

1

a Rule 59(e) motion: (1) manifest errors of law or fact upon which the judgment was based; (2) newly discovered or previously unavailable evidence; (3) manifest injustice in the judgment; and (4) an intervening change in the controlling law. 11 Wright, Miller & Kane, *Federal Practice and Procedure* § 2810.1 (2nd ed. 1995). Rule 59(e) "cover[s] motions to vacate judgments, not just motions to modify or amend." *Edward H. Bohlin, Inc. v. The Banning Co., Inc.*, 6 F. 3d 350, 355 (5th Cir. 1993), *citing Foman v. Davis*, 371 U.S. 178 (1962); *Kelly v. Delaware River Joint Comm'n*, 187 F.2d 93 (3rd Cir.), *cert. denied*, 342 U.S. 812 (1951).

The Court has "considerable discretion in deciding whether to reopen a case under Rule 59(e)," *Bohlin*, 6 F.3d at 355, limited only by the requirement that it "strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." Here, the balance between these two goals tips affirmatively toward the latter. The Court's Memorandum Opinion and Order ("Order"), contains errors of law and fact upon which the judgment was based that, if corrected, will compel further consideration and, ultimately, relief.

I.      Petitioner's Complaints Concerning State Habeas Counsel.

Petitioner set out ample facts to show that state habeas counsel provided ineffective assistance by failing to investigate until almost the eve of filing the state habeas application, and by producing an application presenting only claims that were either not cognizable, not ripe for decision, were procedurally barred, waived for failure

to raise earlier or were insufficiently argued. That no claim in the Application could succeed is not simply the opinion of petitioner. It was the conclusion of the trial court , subsequently endorsed by the Court of Criminal Appeals. *See Motion Exhibit B* - State's Proposed Findings of Fact and Conclusions of Law Adopted by the District Court; *See Ex Parte Wilkins*, No. WR-75,229-01 (Tex. Crim. App. 2011)(not designated for publication). Petitioner also pleaded his state habeas counsel's various conflicts of interest, demonstrated by counsel's efforts to prevent petitioner from acquiring the zealous representation that he sought.

The Court's failure to appraise these allegations fully and accurately has produced a manifest injustice in the judgment. In discussing petitioner's requests for funding, the Court remarks that he has gone beyond complaints against the trial court or of former counsel in order to make "implicit criticisms" against this Court's ruling on his application for funding. Doc. # 60 at 12. While petitioner does indeed contest the correctness of the Court's ruling on his funding application, the need to make that application had its origin in the conduct of state habeas counsel, Jack Strickland. That is the true reason why Petitioner is not better able to demonstrate the substance of his actual claims.

The Court was mistaken in finding that petitioner's concerns about state habeas counsel's professionalism and performance were "factually unsupported." Doc. # 60 at 25. To the contrary, both petitioner's Motion for Scheduling Order, Doc. # 10,

3

incorporated by reference into his Petition for Writ of Habeas Corpus, Document # 30 at

3 n. 2, and the Petition itself, are accompanied by exhibits demonstrating that state habeas

counsel labored under conflicts of interests.[1]  Counsel's commitment to return to work for

the Office of the District Attorney while still purportedly representing petitioner, his

relationships with trial and appellate counsel and with the trial court, and his attempts to

thwart Petitioner's *pro se* attempts to draw attention to the situation all have documentary

support.  Petitioner's Motion for Scheduling Order, Doc. # 10, much of which is devoted

to outlining the course of Strickland's representation of petitioner, was accompanied by

three volumes containing sixty-six exhibits. *See* Motion, Doc. # 10 at 7-34 and exhibits

referred to therein, *e.g, Motion Exhibit N* - News Article: Tarrant County Defense

Attorney to rejoin DA's office; *Motion Exhibit I* - Motion to Fire Court Appointed 11.071

Habeas Attorney.  That factual support includes many documents taken from the record of

the state courts.  Not one of those exhibits was challenged or rebutted in any way by

Respondent.

What the Court terms "proper, indeed vigorous, state habeas representation," Doc.

# 60 at 25, should have involved an expeditious investigation of the factual, as well as the

legal, grounds for relief in Petitioner's case from the time of appointment, as required by

the Texas state habeas statute, TEX. CODE CRIM. PROC. Art. 11.071 § 3(a).  However,

Fred Pendergraf, the investigator hired by Strickland, does not appear to have conducted

---

[1]Petitioner herein refers to exhibits filed with his Motion for Scheduling Order, Doc. # 10 as "Motion Exhibits" and those exhibits filed with his Petition, Doc. # 30 as "Petition Exhibits."

any witness interviews until ten days before the state habeas Application was filed. At most, four witnesses were interviewed.[2]  The net result of Strickland's work on the case was an Application raising fourteen issues solely based on the trial record and four lethal injection claims which were held not to be cognizable and not ripe for decision.  All of the record-based issues were held to be barred, having already been raised on direct appeal, were waived for not having been raised earlier, or were insufficiently argued.

Remarkably little, and very late, investigation was actually performed in this capital proceeding where the allegation of non-record facts was a prerequisite, *see Ex parte Medina,* 361 S.W.3d 633, 638 (Tex. Crim. App. 2011)("Texas law has long required all post-conviction applicants for writs of habeas corpus to plead specific facts which, if proven true, might call for relief.")  Petitioner therefore urges the Court to reconsider whether state habeas counsel's performance did in fact fall below the level of "prevailing professional norms." *Strickland v. Washington,* 466 U.S. 668, 688 (1984).

II.   *Martinez v. Ryan* may, and *Maples v. Thomas* does, provide cause to excuse
      Petitioner's procedural default.

As the Court observes, because of the grant of a writ of certiorari in *Trevino v. Thaler,* No. 11-10189, 133 S.Ct. 524 (Oct. 29, 2012), *Martinez v. Ryan,* 132 S.Ct. 1309 (2012), may yet be held to be applicable to federal habeas corpus cases arising out of the Texas state courts, even if the Fifth Circuit has held otherwise for now.  Doc. # 60 at 23-24.  If *Martinez* is held applicable to Texas, then State habeas counsel's performance,

---

[2]*See Motion Exhibit G* - Fred Pendergraf Billing

properly reconsidered, provides cause to excuse Petitioner's procedural default.

Moreover, while this Court states that *Maples v. Thomas*, 132 S.Ct. 912 (2012) "simply would not apply to this case," the documents filed in support of the Motion for Scheduling Order and the Petition should be considered once again, since they demonstrate that there was no true attorney-client relationship between petitioner and Strickland.[3] Counsel had accepted employment adverse to Petitioner, in fact, with the very agency trying to kill petitioner. *See Motion Exhibit N* - News Article: Martha Deller, Tarrant County defense attorney to rejoin DA's office, Fort Worth Star Telegram, May 22, 2010. Petitioner repeatedly urged counsel to investigate, and to bring claims of ineffective assistance of trial and appellate counsel. However, state habeas counsel had professional involvements with appellate counsel, *see Motion,* Doc. # 10 at 18-21, and was markedly reluctant to bring such claims against either appellate or trial counsel. Motion, Doc. # 10, at 11-12, 18-21. Counsel failed to hire a psychologist or even a mitigation specialist, in spite of having funds, did not investigate until the eleventh hour, ignored Petitioner's repeated protests concerning his inaction, and ultimately tried to gag Petitioner by having his pleadings sealed.

Such behavior severs any "trust relationship" that would justify imputing the attorney's acts to that client. *See Maples*, 132 S.Ct. at 922-23. The Court's statement that Petitioner was "acting through Strickland," Doc. # 60 at 5, when the state habeas

---

[3]*See* Motion, Doc. # 10 at 23-33, and exhibits referenced therein, detailing the course of the relationship between petitioner and habeas counsel.

application in this case was filed, is therefore in error, since no agency relationship in fact

existed, *see Maples*, 132 S.Ct. at 922-23. The Court's decision should therefore be

reconsidered.

There is, moreover, no caselaw that indicates that the Fifth Circuit would hold that

*Maples* is not applicable to Texas cases, nor is *Maples* in any way inter-dependent with

*Martinez*, as suggested in the Memorandum Order. Doc. 60 at 41 n. 8. *Maples* preceded

*Martinez* by two months, the former being decided on January 18, 2012, the latter on

March 20, 2012. The *Martinez* decision stated the necessary degree of substantiality of

the claims, and the stage of the proceedings, to which its analysis would be relevant.

*Martinez* can also be read as limiting the type of claim to which it is applicable.[4] *Maples*

stated no limitations on the type of claim, the degree of necessary substantiality or the

stage of proceedings to which it applies. *Martinez* did not purport to restrict the

application of *Maples* in any way. Thus, *Maples* provides a "cause" which permits

consideration of the merits of this case, development of which should therefore be

permitted, with the provision of funding and an opportunity for an evidentiary hearing.[5]

---

[4]Oral argument on this question will be heard on March 5, 2013 by the Ninth Circuit Court of Appeals in *Hunton v. Sinclair*, No. 12-35363, in which the issue presented for review is "Whether the Supreme Court's ruling in *Martinez v. Ryan* should apply to Mr. Hunton's *Brady v. Maryland* claim, which was not allowed to be raised as part of his direct appeal."

[5]Since *Maples* does not purport to limit the types of claims to which it is relevant, it also served cause to permit the consideration of Petitioner's Claims 8, 9 and 11, whether or not they concern ineffective assistance of counsel. *See* Doc. # 60 at 41 n. 8.

III.    Petitioner's Application for Funding

Since, under *Maples*, state habeas counsel's virtual abandonment of petitioner

provides cause for the default of issues in state court, *Maples* also calls for this Court to

provide the funding reasonably necessary to allow petitioner to pursue his claims before

the Court.  Given the virtual absence of the investigation to which petitioner was

statutorily entitled in state court, he was compelled to seek funding for investigation in

this court, being indigent and having no other recourse.  Consequently, undersigned

counsel sought funding prior to the filing of the petition, as envisaged by *McFarland v.

Scott*, 512 U.S. 849 (1994)(finding right to pre-petition assistance for capital defendant in

federal habeas corpus proceeding, pursuant to former provisions of 21 U.S.C. §

848(q)(4)(B), now recodified as 18 U.S.C. § 3599 (a)(2)).[6]  However, that request was not

in a "virtually unlimited amount," Doc. # 60 at 13.  Petitioner specified and explained the

purposes to which the funding would be put, stating the specific sums required.  It was

only because of the extremely limited investigation conducted at trial and in state habeas

proceedings that the purposes could not be more narrowly defined, nor could the sums

involved be pared down.

While the amount requested obviously exceeded the presumptive limit of $7,500

laid down by 18 U.S.C. § 3599 (g)(2), it is, one hopes, a rare event for a capital habeas

---

[6]*Patterson v. Johnson*, 2000 U.S. Dist. LEXIS 12694 * 2 (N.D. Tex. Aug. 31, 2000)(petitioner should not be compelled to make out his claims before being supplied with sufficient resources, especially where claim has been defaulted in state court).

corpus case, arising out of state court proceedings, to arrive in federal court so little investigated and therefore so much in need of resources for development. Absent the ability to conduct the investigation that should have been performed in state court, petitioner cannot properly present his case.

IV.    The Files of Former Counsel.

With regard to the Court's discussion of the difficulties encountered by Petitioner in obtaining the files held by his previous attorneys, *see* Doc. # 60 at 13-14, the Court in the Memorandum Opinion states that "Nothing in the petition caused the court to conclude that petitioner's federal habeas counsel has not received all parts of his state court counsels' files relevant to his federal habeas petition." *Id.*[7] As specifically noted in the Reply, Doc. # 52 at 8, those files of trial counsel that were obtained by petitioner contain very few copies of electronic communications, little work product, correspondence concerning, or to and from Petitioner, and no correspondence or communications at all concerning Petitioner created after the time that representation terminated. Undersigned counsel ultimately had to file motions in state court in order to obtain a sealed defense motion of which trial counsel did not keep a copy, and to obtain copies of the audio-visual exhibits actually admitted at trial. Thus, clearly there was material lacking that should have been contained in the files.

---

[7]The Petition in this case was filed on May 22, 2012, prior to the telephonic hearing that this Court conducted on May 31, 2012, and not before it occurred, as erroneously stated in the Memorandum Opinion, Doc. # 60 at 14.

Undersigned counsel did not admit, and cannot agree, that petitioner's claim that he had been denied the files of his state court counsel "lacked substance." Doc. # 60 at 14. As explained at the hearing concerning Petitioner's files, although there had been substantial compliance by former counsel at that time, counsel had withheld the prosecution discovery materials, and there were still other items lacking: retainer letters, electronic communications and billing, correspondence and work product appeared to be missing from Mr. Ball's file, *see* Doc. # 44, Transcript of May 31, 2012, hearing at p. 12-13, and from Mr. St. John's files, *id.* at p. 19. Jack Strickland also specifically admitted to withholding documents that petitioner had attempted to file because he thought they made "unfounded accusations" against the trial judge. *Id.* at 28.

As explained in the Reply, Doc. # 52 at 8, the only prosecution discovery materials that could ultimately be obtained by Petitioner were those previously downloaded by trial counsel from Tarrant County's Electronic Case Filing System ("ECFS") at the time of trial or provided by counsel to the trial psychologist, Dr. Kelly Goodness. The Tarrant County Criminal District Attorney's Office has refused to give undersigned counsel access to the ECFS, therefore petitioner has no way of checking precisely what documents or materials were available to the defense at the time of trial but are now missing.

Thus, Petitioner is sure that he has not had access to all the materials available to, or in the possession of, his former counsel. Neither he, nor this Court, can therefore

10

know whether he has "received all parts of his state court counsels' files relevant to his federal habeas petition." Doc. # 60 at 14.

V.    Petitioner's Claims for Relief.

    a.    Claims for Relief 1 and 10.

The Court denied Claims and 1 and 10, which bear on the ineffectiveness of trial counsel at the punishment phase of trial. With regard to Claim 1, concerning the mitigation investigation and presentation at trial, the Court concludes that a "timely and reasonable" investigation was conducted by trial counsel. Doc. # 60 at 28. This is an erroneous factual conclusion. 11 Wright, Miller & Kane, *Federal Practice and Procedure* § 2810.1 (2nd ed. 1995). The Memorandum Opinion overlooks the yawning gap in the investigation, which commenced three months after Petitioner's arrest in November 2005 with the hiring of investigator Bruce Cummings, who apparently did not bill for any work at all, and mitigation specialist Melissa Robinson, who billed for two months' services but then ceased work. *See* Order of February 10, 2006, granting Cummings' appointment to provide investigative services to a maximum amount of $1,000. 1 CR 14-16; *Petition Exhibit 5* - Melissa Robinson billing.

Investigation did not then recommence until January 2008, approximately eighteen months later and the same month that jury selection began. Psychologist Kelly Goodness was then hired and conducted some mitigation investigation, as well as performing testing on Petitioner. Goodness supplied counsel with lists of further material she required, and

recommended full neuropsychological testing since she had no doubt that Petitioner has neuropsychological deficits. *See Petition Exhibits 15 and 16* - Dr. Goodness - Records Needed Lists; *Petition Exhibit 28* - Dr. Goodness Psychological Testing and Interpretation. Little of the required material was provided, and the recommended testing was not performed. A new investigator, Clifford Ginn was hired two days before jury selection actually started, and worked with another investigator Doug Lamberson. *See Petition Exhibit 11* - Clifford Ginn Billing Records.

The defense case at sentencing ultimately consisted of five correctional officers from the county jail, who simply testified that Petitioner was personally compliant and respectful, and five immediate family members - Petitioner's mother, step-father, grandmother, wife and his seventeen year-old son.[8]  In addition, counsel called a former prison warden to testify about conditions of confinement, and Petitioner himself testified.[9] No real attempt was made to bring to the jury's attention any factors that might explain why someone coming from the relatively normal background that his family portrayed could have ended up in the troubled cycle of crime and incarceration into which Petitioner had fallen. The potential information that emerged even in the short time available to Dr. Goodness - neuropsychological damage possibly caused by head injuries, "huffing" of

---

[8]*See* Testimony of Lynda Koepnick, Kelly Vaughn, Clay Wilkins, Emily (sic, actually Emma Lee) Harris and William Koepnick. 33 RR 98-188.

[9]See Testimony of Susan Perryman-Evans and Christopher Chubasco Wilkins. 35 RR 10-143.

inhalants, ingestion of toxic industrial chemicals, drug use, and possible exposure to LSD while a baby, a far more dysfunctional family life than that portrayed by his family, and the failure of the Texas Youth Commission to respond with appropriate services to Petitioner's problems while he was under their control - was never explored. *See, e.g., Petition Exhibit 9* - Dr. Goodness Self Report Survey; *Petition Exhibit 26* - Dr. Goodness Records Review TYC; *Petition Exhibit 28* - Dr. Goodness Psychological Testing and Interpretation.

Counsel's weak and ineffectual presentation at sentencing, coupled with their stated strategy of relying on Petitioner's "amusing and personable nature" to support the case in mitigation, *see Petition Exhibit 24* at 159, demonstrates the unreasonableness of ceasing their investigation when they did.  Given the prosecution case they had to contend with, that decision was not one supported by reasonable professional judgment.  *See* Doc. # 60 at p. 26-29.

With regard to whether Petitioner can prove prejudice, he has gone beyond "conclusory allegations," Doc. # 60 at 28, and has identified facts that would have warranted further investigation, such as his mother's troubled marital history, his neuropsychological status and the Texas Youth Commission's failure to respond to his needs.  That he cannot expand his case further is attributable to the inadequate representation received from state habeas counsel, whose dereliction of duty should not be attributed to Petitioner but in fact requires reconsideration of the Court's Opinion.

13

So far as Claim 10, regarding excessive security measures in the courtroom is concerned, Petitioner is in the same position. Not being able to investigate in order to demonstrate to the Court the facts of which he complains, Petitioner is prevented from succeeding on this claim. He notes, however, that even if he had been found at a hearing to have present a security risk sufficient to justify some measure of restraint, the level of restraints must be substantiated by the risk found after "a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 542 U.S. 622, 629 (2005). But for that, due process is violated. *Id.* Since Petitioner's counsel failed to seek a hearing, or to object at all, it cannot be correctly concluded by this Court that nothing would have been "gained ...by an objection to security measures of the kind petitioner describes." Doc. # 60 at 30.

b.    Claim for Relief 2 and 3.

Petitioner's second and third Claims for Relief concern trial counsel's previous representation of the victim of an extraneous offense introduced at sentencing, and the conduct of a hearing concerning that potential conflict of interest. The Memorandum Opinion errs factually in stating that counsel and petitioner both testified at the March 9, 2009, hearing, Doc. # 60 at 31: no witnesses were actually sworn at the hearing, in spite of the State's request that they should be. *See* Transcript of Mar. 9, 2009, hearing at 10. The hearing was conducted without formality, and petitioner was, in effect, unrepresented.

The Memorandum Opinion assumes that it could not be demonstrated that trial counsel actively represented conflicting interests since the victim who was his former client was deceased and the representation in question had occurred twenty years earlier. Doc. # 60 at 32.  As with Petitioner's other claims, he was unable to have this matter investigated in spite of numerous requests to state habeas counsel to do so.  *See* Motion, Doc. # 10 at   Absent some opportunity for an investigation, and given the flawed hearing in the trial court, at which Petitioner was, *de facto*, without legal representation, this Court assumes that there was no conflict of interests.  Doc. # 60 at 32.  However, since Petitioner has not had the opportunity to have the matter investigated and to present the fruits of that investigation, the Court's conclusion should be reconsidered. p. 32.

Likewise, the Court should reconsider its conclusion that Claim for Relief 3 fails because: "The goal of the hearing was solely to determine whether petitioner's trial counsel should continue representing him on direct appeal," and Petitioner "ended up receiving what he was seeking – new counsel on appeal." Doc. # 60 at 34.  The actual purpose of the hearing was "to investigate and develop a record on appellant's allegation" that "counsel was blatantly ineffective in his representation of appellant at trial, and will continue to be ineffective on appeal." *See* Court of Criminal Appeals Order of February 11, 2009 in Cause No. AP-75,878.  The hearing did not, however, provide an opportunity to Petitioner to "investigate and develop a record" concerning how trial counsel's previous representation of a victim might have affected his performance.

15

While Petitioner did receive new counsel for his direct appeal, a given purpose of the March 2009 hearing was also the investigation and development of the factual record concerning trial counsel's performance. Petitioner's "substantial right" to unconflicted and effective representation at trial should therefore have been at issue during the hearing, but because he was in reality unrepresented at that point, the matter was not resolved. Petitioner was thereby deprived of a meaningful hearing concerning whether his Sixth Amendment right to counsel at trial had been violated. Consequently, this Court's determination that the hearing was not a critical stage, Doc. # 60 at 33, must be reviewed.

The Memorandum Opinion remarks on the fact that these claims were not raised on direct appeal or in habeas proceedings. However, as pointed out in the Petition, Doc. # 30 at 105, they should indeed have been raised. Petitioner had repeatedly tried to bring the conflict issue to the attention of habeas counsel and had remarked on the unfairness of how the matter had been handled, but to no avail.

c. <u>Claim for Relief 4.</u>

The Memorandum Opinion dismisses Petitioner's fourth claim for relief, that his counsel had prevailed on him to go to trial rather than enter a voluntary plea of guilty, as he had wished, as "somewhat absurd." Doc. # 60 at 35. However, trial counsel knew what Petitioner's wishes were with regard to a plea, and it was only "at their insistence" that he went to trial. *Petition Exhibit 24* at 156.

16

Contrary to the Memorandum Opinion, Doc. # 60 at 35, the net result of counsel overriding their client's decision was not the same as it might have been had he been permitted to enter a guilty plea: The Supreme Court has recognized the potentially deleterious impact on a jury's sentencing decision of advancing a defense at the guilt phase of trial which is then contradicted by the strategy adopted at sentencing. *See Florida v. Nixon*, 543 U.S. 175, 191-2 (2004); Lyon, *Defending the Death Penalty Case: What Makes Death Different?*, 42 Mercer L. Rev. 695, 708 (1991)("It is not good to put on a 'he didn't do it' defense and a 'he is sorry he did it' mitigation. This just does not work. The jury will give the death penalty to the client and, in essence, the attorney.")

The jurors' reaction to the realization that here they had been subjected to a charade of a trial, motivated by counsel's desire for billable hours, 35 RR 16-17, cannot have failed to have an impact on punishment. A jury presented with a consistent sentencing theory, untainted by having undergone the stress and inconvenience of sitting through a murder trial in order to increase counsel's income, might well have decided differently.

d.    Claim for Relief 5.

Petitioner's Fifth Claim for Relief concerns his incompetency to stand trial and the failure of counsel, or the trial court, to take action. The Memorandum Opinion denies this claim, asserting a lack of probative evidence, but disregarding the extent of Petitioner's self-destructive and self-defeating behavior. Doc. # 60 at 35-37.

Petitioner submits that, in light of his obvious inability to engage in a reasoned choice of legal strategies that would protect his own interests, and his undoubted neuropsychological deficits, "real, substantial and legitimate doubt as to his mental competency at the time of trial," *Dunn v. Johnson*, 162 F.3d 302, 306 (5th Cir. 1998), existed and should have been acted on by counsel. They knew more about Petitioner than the mere fact of his poor decision-making. Doc. # 60 at 37. They knew he had only chosen to go to trial because they stood to gain by it, rather than Petitioner. Although the trial court was not privy to Dr. Goodness' reports indicating the existence of those deficits, and her observations of his "[s]ignificant impulsivity and attention problems [and] great difficulty focusing on whatever the task was," *See Petition Exhibit* 28 at 179, it too heard enough of Petitioner's unusual and self-defeating behavior to also be on notice that he was not rational.

Because these issues were not pursued in the state habeas proceedings, and because of the lack of funding, Petitioner was unable to provide the Court with a full neuropsychological report or other evidence to substantiate his claim of substantive incompetency. Moreover, Petitioner respectfully suggests that the Court's conclusion that "petitioner's behavior prior to and during trial demonstrated a blatant disregard for authority and of the proceedings against him," Doc. # 60 at 37, is not supported by the record. Whatever his behavior outside court, Petitioner did not in any way disrupt the trial proceedings. Rather he was cooperating with his counsel, while engaged in a

strategy - theirs, not his - to go through with a trial for reasons that did not serve his own rational ends. Thus, the Court's analysis must be revisited.

Petitioner now asks the Court to reconsider its Memorandum Opinion and to enable him to be evaluated and to present a full picture of his mental functioning.

e.    Claim for Relief 6.

Claim for Relief 6 concerns the guilt/innocence phase of trial. The Court finds that Petitioner has only made the "broad assertion that his counsel failed to conduct a reasonable pretrial preparation and investigation," and has not provided evidence that the investigation done was deficient, or what might have been discovered had investigation been conducted. Doc. # 60 at 38. Trial counsel's efforts with regard to guilt phase investigation were minimal. As detailed above, it is unclear that any investigation at all was done by the initial investigator, and the subsequent investigators were only hired as jury selection began. However, Petitioner's ability to demonstrate what would have come to light, had investigation been conducted, is thwarted, as it is with his other claims, because state habeas counsel failed to investigate at the juncture when time and funding were available, and Petitioner was subsequently denied funds in this court. This claim for relief should therefore be reconsidered.

f.    Claim for Relief 7.

In his Claim for Relief 7, Petitioner asserts that the trial counsel's performance was deficient because of their failure to strike jurors who could not impartially decide his

case.  With regard to juror Medford, counsel's initial decision to try to challenge her for cause was quite correct, because she would have had difficulty in disregarding a confession that the defense would argue was constitutionally infirm.  The trial court denied the challenge, but was clearly surprised by defense counsel's decision to accept her as a juror.  8 RR 140-48; 8 RR 155-156.  The Court had itself expressed concern about Ms. Medford's ability to disregard an improperly obtained confession. 8 RR 154-56.  Nonetheless, trial counsel chose to allow her onto Petitioner's jury.

Thus, Petitioner has made a sufficient showing that Ms. Medford was impaired in her ability to serve as a juror.  Consequently Petitioner was denied "a jury capable and willing to decide the case solely on the [admissible] evidence before it." *Smith v. Phillips* 455 U.S. 209, 215 (1985).  Reconsideration of this claim for relief is therefore required.

## CONCLUSION AND PRAYER FOR RELIEF.

For the reasons stated herein, Petitioner Christopher Chubasco Wilkins respectfully requests that this Honorable Court grant his Motion to Vacate, Alter or Amend Judgment Denying Petition for Writ of Habeas Corpus.  He requests that the Court alter or amend its decision as reflected in the Memorandum Opinion and Order, and reopen its judgment to permit a full and fair exploration of Petitioner's constitutional challenges to his conviction and sentence, and grant funding for investigation and, in due course, an evidentiary hearing.  In the alternative, Petitioner requests that the Court grant him a Certificate of Appealability on these meritorious claims.

Respectfully submitted,

**HILARY SHEARD**
Texas Bar # 50511187
7301 Burnet Road, # 102-328
Austin, TX 78757
Phone/Fax: (512) 524 1371
E-mail: HilarySheard@Hotmail.com

By: *Hilary Sheard*

*Counsel for Christopher Chubasco Wilkins, Petitioner*

## CERTIFICATE OF SERVICE

I certify that on February 23, 2013, a copy of the foregoing pleading was served on counsel for the Respondent by first class U.S. mail:

Jeremy Greenwell Esq.
Office of the Texas Attorney General
Postconviction Litigation Division
P.O. Box 12548
Austin, Texas 78711-2548.
Jeremy.Greenwell@texasattorneygeneral.gov

Counsel for Petitioner.

## CERTIFICATE OF CONFERENCE

I certify that I have conferred with opposing counsel in a good faith attempt to resolve the matter without court intervention, and the motion is opposed.

Counsel for Petitioner.

21